# Illinois Official Reports

## Appellate Court

***People v. Lake*, 2015 IL App (3d) 140031**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGUS D. LAKE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0031 |
| Filed | April 8, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 11-CF-680; the Hon. Robert P. Livas, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part.<br>Cause remanded with directions. |
| Counsel on Appeal | Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Dawn Duffy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                    JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice McDade and Justice Wright concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Angus D. Lake, pled guilty to aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(1), (d)(1)(F) (West 2010)). Defendant appeals, arguing that: (1) his sentence of nine years' imprisonment was excessive; and (2) a $5-per-day presentence incarceration credit should be applied against various fines imposed by the trial court. We affirm defendant's sentence, vacate the trial court's order for fines and fees, and remand the matter of fines and fees to the trial court with directions.

¶ 2                                    FACTS
¶ 3        Defendant pled guilty to aggravated DUI (625 ILCS 5/11-501(a)(1), (d)(1)(F) (West 2010)) based on having a blood alcohol content (BAC) of 0.08 or more and being involved in a motor vehicle accident in which a vehicle driven by defendant struck a horse that Michelle Eustis, defendant's girlfriend, was riding, resulting in Michelle's death. In exchange for defendant's guilty plea, the State agreed to dismiss three additional charges against defendant. The parties made no agreement concerning defendant's sentence.

¶ 4        A sentencing hearing was held. Police officer Cornelious Monroe testified that he interviewed defendant on April 11, 2011. Defendant stated that he raced horses at Balmoral Park racetrack (Balmoral) on the evening of April 10, 2011. Afterward, defendant went to a bar near the racetrack with Michelle and others at approximately 11:30 p.m. or 12 a.m. While there, defendant drank approximately four beers. The group left the bar at approximately 2 a.m. and went to a barn at the racetrack and continued drinking. Defendant drank four to five swigs from a bottle of whiskey at the barn. Michelle and Heather France left the barn to take a ride on Michelle's horse.

¶ 5        When Michelle and France had been gone for approximately 20 minutes, defendant got into his truck and drove off on a gravel access road to look for them. Monroe said the road was "pretty dark" at night. Defendant told Monroe he was driving at a speed of approximately 20 miles per hour. Defendant felt impaired or "buzzed" when he began driving. Defendant told Monroe that he felt the same way when he drove that night as he did on previous occasions when he had been charged with DUI. As he was driving, defendant saw Michelle and France riding bareback on a horse. He drove alongside the horse, and the horse began bucking its head. The horse struck the truck and the two women fell off the horse. Defendant's truck went into a ditch. Defendant got out of his truck, checked on Michelle and France, and called 911.

¶ 6        Marcus Turner testified that, on the evening in question, he went to a bar near the racetrack with defendant, Michelle, France, and others. They were all drinking beer. They all left the bar at approximately 1 or 1:30 a.m. and went to a barn at the racetrack to "party." Defendant, Michelle, and France left the barn. Michelle and France were headed to the other side of the

racetrack to get Michelle's horse. After about 15 or 20 minutes, Turner went outside and saw defendant's truck on the side of the road and Michelle and France lying in the road. Defendant was sitting down and smoking a cigarette. Defendant appeared to be in shock. Turner asked defendant if he called an ambulance. Defendant did not respond. Turner asked a second time, and defendant called an ambulance. Defendant appeared to be drunk; defendant's eyes were red and he smelled of alcohol.

¶ 7    Kevin Meredith and Michael Waterman, firefighter paramedics, responded in separate ambulances to Balmoral at approximately 4:46 a.m. on April 11, 2011, in response to a call of someone falling off a horse. Waterman testified that he was in the first ambulance to arrive on the scene. When Waterman arrived, he heard a lot of screaming and observed two women lying on the ground. Waterman treated Michelle, who was bleeding from a head wound. Michelle was taken to a hospital in the ambulance. Michelle subsequently died as a result of her injuries. Meredith arrived on the scene after Waterman. Meredith treated France, who had injuries to her clavicle and both legs. France admitted that she had been drinking and appeared to be intoxicated.

¶ 8    David Bartucci testified that he was a security officer at Balmoral. Bartucci responded to the scene of the accident early in the morning on April 11, 2011. He saw defendant standing outside defendant's truck. Bartucci told defendant to go to his truck and not leave. Defendant initially moved his truck but stayed in the area. After about 20 minutes, defendant drove away. Bartucci followed defendant on a "brief pursuit throughout the grounds." Eventually, defendant stopped his truck, walked into one of the barns, and began feeding horses. Bartucci asked defendant to follow him. Defendant yelled at Bartucci, saying that he did not have to go anywhere, he had probably lost his girlfriend, and he was just trying to feed his horses. Bartucci replied that defendant had to go back to the scene of the accident and talk to the police when they arrived. Defendant seemed distraught. Defendant eventually followed Bartucci to the scene of the accident.

¶ 9    State Trooper Joshua Lotley testified that he was dispatched to Balmoral at approximately 6:33 a.m. on April 11, 2011. Defendant had bloodshot eyes and slurred speech and appeared to be under the influence of alcohol. Defendant said he had been drinking. Lotley conducted a Breathalyzer test on defendant, and defendant had a BAC of 0.147. Defendant told Lotley that he drove behind a horse, and the horse threw off two riders. Defendant was cooperative and compliant.

¶ 10    Trooper Dustin Geier testified that he went to the scene of the incident and prepared an accident reconstruction report. Based on the skid marks and damage to defendant's truck, Geier concluded that defendant's vehicle was traveling at a speed of at least 46 miles per hour and that the vehicle struck the horse. The skid marks indicated evasive action. Geier opined that defendant saw the horse in his path and jerked the steering wheel to the left, causing the back of defendant's truck to fishtail and strike the rear of the horse. Geier did not believe that the damage to the truck was consistent with the horse bucking up at the truck or with the truck sideswiping the horse. The damage to the truck was over a broad area halfway to two-thirds of the way up the vehicle and descending down, which would be consistent with the horse being struck and sliding down the back of the vehicle. If the horse had bucked, Geier would have expected to see smaller, more focused areas of impact where the horse's hooves struck the truck. Geier believed that contributory causes of the crash were DUI, excessive speed, and lack of visibility. The road on which the accident occurred was worn and had no lane markings.

There was no artificial lighting in the area. This was the first accident reconstruction involving a collision between a vehicle and a horse that Geier had done.

¶ 11    Charles Eustis testified that he was Michelle's father. On April 11, 2011, Michelle was 25 years old. Michelle had a daughter, Haylee, who was seven years old on the date of the accident. Charles owned horses at Balmoral. At the time of the accident, defendant was dating Michelle and had been living with Charles, Michelle, and Haylee for two to three months. Defendant had been racing horses at Balmoral for more than two years. Charles was notified about the accident shortly after it occurred. He went to the racetrack and saw Michelle in an ambulance. He saw the horse that had been involved in the accident, and the horse's "whole rear end was torn up." The horse survived.

¶ 12    The State introduced Charles's victim impact statement into evidence. Additionally, Jacquelyn Eustis, Michelle's sister, read her victim impact statement.

¶ 13    Defendant submitted a drug and alcohol evaluation to the court stating that he suffered from chemical dependency and had been diagnosed with post-traumatic stress disorder (PTSD). The evaluation stated that defendant had been sober from drugs and alcohol for a year and that he would benefit from intensive outpatient therapy. Defendant had been attending alcoholics anonymous and narcotics anonymous meetings in jail.

¶ 14    Several letters in mitigation written by defendant's friends and family members were before the court at the sentencing hearing. The letters stated that defendant was trustworthy, hardworking, of good character, and would not intentionally hurt anyone.

¶ 15    Defendant gave a statement and allocution, stating that he was sorry for what happened and accepted responsibility. He stated that he drove on the night of the incident because he wanted to find Michelle and France and make sure that they were okay. He was worried about the women because they had been gone for 30 to 40 minutes. He did not intend to harm them. Michelle was his best friend and "somebody [he] loved deeply and was planning to marry." Defendant apologized to Michelle's family, France, and his own family, as he had not been able to support his children financially or be with them the past year while he was in jail.

¶ 16    A presentence investigation report before the court at the hearing showed that defendant was 41 years old at the time of the incident. He had prior convictions for: (1) DUI (1991); (2) driving while license suspended (1992); (3) transportation of alcohol (1993); (4) attempted criminal sexual conduct (1993); (5) failure to stop at an intersection and property damage (1998); (6) assault (2004); and (7) DUI (2006). He had been married and divorced twice and had six children who ranged in age from 3 to 21 years old. Defendant left high school after his junior year and was employed training and riding race horses for the previous 20 years.

¶ 17    The trial court sentenced defendant to nine years' imprisonment in the Department of Corrections. The court stated that it had considered the evidence presented by the parties, the presentence investigation report, and the statutory factors in aggravation and mitigation. The court noted that defendant had an alcohol problem. The court found the State's witnesses to be credible. After hearing Geier's testimony and considering the photographs and exhibits introduced by the State, the court concluded that if the accident did not happen exactly how Geier described, it was close.

¶ 18    The trial court opined that defendant's imprisonment was necessary for the protection of the public and that imposing probation rather than imprisonment would deprecate the seriousness of the offense. The court noted that defendant's criminal record included three

alcohol-related offenses. The court stated that every time defendant was convicted of a crime in the past, he was given some form of probation or conditional discharge but continued to reoffend. The court believed that a sentence of imprisonment was necessary to deter defendant and others from engaging in similar conduct. The court stated:

> "I believe his remorse, I believe he is sorry about what happened but perhaps if he had in mind the three prior alcohol events where he went through the criminal justice system, [it] might not have happened to begin with. He served a total of perhaps less than 14 days in jail *** on those other three matters combined. That won't happen here ***."

¶ 19    The trial court orally entered a judgment for costs against defendant at the conclusion of the sentencing hearing. The court stated that the State would prepare a costs sheet that was to be reviewed by the defense. On the day of sentencing, the court entered a docket order for fines and fees in the amount of $2,540. The docket order enumerated the monetary assessments as follows: (1) $1,000 DUI emergency response assessment; (2) $150 crime lab assessment; (3) $800 DUI equipment assessment; and (4) $590 in manual calculations. A "Criminal Cost Sheet" was also filed on the date of sentencing and reflects that costs in the amount of $2,540 were assessed against defendant. Among the assessments on the cost sheet were: (1) a $25 Violent Crime Victims Assistance Fund (VCVAF) fine; (2) a $100 court systems fee; (3) a $10 arrestee's medical costs fee; (4) a $25 trauma center fee; (5) a $1,000 DUI law enforcement fine; and (6) a $10 mental illness fee. The cost sheet contains some citations to statutory authority for the various assessments.

¶ 20                                    ANALYSIS
¶ 21                              I. Excessive Sentence
¶ 22    Defendant argues that the sentence imposed by the trial court–nine years' imprisonment–was excessive and an abuse of the trial court's discretion. We disagree.

¶ 23    A trial court has wide discretion in sentencing a criminal defendant. *People v. Markley*, 2013 IL App (3d) 120201, ¶ 31. The trial court's sentencing decision is granted great deference by reviewing courts because the trial court is generally in a better position to determine the appropriate sentence since the trial court has the opportunity to weigh factors like "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). It is not our duty to reweigh the factors involved in the trial court's sentencing decision. *People v. Coleman*, 166 Ill. 2d 247, 261-62 (1995). It is presumed that the court considered any mitigating evidence absent some indication, other than the sentence itself, to the contrary. *People v. Anderson*, 225 Ill. App. 3d 636, 652 (1992).

¶ 24    We review the trial court's sentencing decision for abuse of discretion. *Markley*, 2013 IL App (3d) 120201, ¶ 31. When a sentence falls within the statutory range, the sentence does not constitute an abuse of discretion unless it is manifestly disproportionate to the nature of the offense. *Id.*

¶ 25    Upon review, we hold that the trial court's sentence of nine years' imprisonment was not manifestly disproportionate to the nature of the offense. The State presented evidence that defendant was driving while under the influence of alcohol at a speed of at least 46 miles per hour on a dark road with no artificial lighting. Although there was evidence that defendant

tried to swerve to miss the horse ridden by Michelle and France, he was unable to do so due to his excessive rate of speed, his intoxication, and the poor visibility. Michelle died and France suffered serious injury as a result of the incident. Defendant had a criminal record which included a prior conviction for transportation of alcohol and two prior convictions for DUI, the latest of which occurred in 2006. Defendant told Monroe that when he drove on the evening of the accident, he felt like he did during his prior DUIs.

¶ 26 There is no indication from the record that the trial court failed to consider any factor in mitigation, including defendant's remorse, his history of employment, and the fact that he did not intend to hit the horse with his vehicle. Defendant argues that the additional mitigating factors (1) that he was unlikely to commit another offense and (2) that he was likely to comply with a term of probation applied in this case based on defendant's statement in allocution and his diagnosis of PTSD. Defendant's argument is a veiled attempt to have us reweigh the factors in aggravation and mitigation. We refuse to do so. See *Coleman*, 166 Ill. 2d at 261-62. We also emphasize the trial court's express reliance upon the fact that defendant drove while intoxicated in this instance despite having prior convictions for DUI. The court further noted that although defendant had successfully completed terms of probation in the past, he continued to reoffend.

¶ 27 Lastly, we emphasize that the nine-year sentence of imprisonment imposed by the trial court falls in the middle of the range of imprisonment terms that defendant was eligible for. See *Markley*, 2013 IL App (3d) 120201, ¶ 31. Defendant faced a sentencing range of between 3 and 14 years' imprisonment. See 625 ILCS 5/11-501(d)(2)(G)(i) (West 2010). Accordingly, we affirm the sentencing order entered by the trial court.

¶ 28                                    II. Fines and Fees

¶ 29 Defendant asks that we apply $5-per-day presentence incarceration credit pursuant to section 110-14(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-14(a) (West 2010)) against various fines imposed upon him by the trial court. The parties agree that defendant is entitled to the presentence incarceration credit but disagree as to which assessments the credit applies against. We hold that the presentence incarceration credit applies against $1,135 in eligible fines.

¶ 30 We review *de novo* questions regarding the appropriateness of fines, fees, and costs. *People v. Ackerman*, 2014 IL App (3d) 120585, ¶ 26. Section 110-14(a) of the Code provides that:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14(a) (West 2010).

¶ 31 A defendant may request presentence incarceration credit for the first time on appeal. *People v. Woodard*, 175 Ill. 2d 435, 457 (1997).

¶ 32 The parties agree that defendant is entitled to a $5-per-day credit for the 367 days he spent in custody prior to sentencing, from April 11, 2011, through April 11, 2012, pursuant to section 110-14(a) of the Code (725 ILCS 5/110-14(a) (West 2010)). The total amount of the credit comes to $1,835.

¶ 33    The parties further agree that the $25 trauma center fee, $1,000 DUI law enforcement fine, and the $10 mental illness fee assessed against defendant are fines subject to the presentence incarceration credit. The parties disagree, however, as to whether the credit applies against (1) the court systems assessment, (2) the arrestee's medical costs fee, and (3) the VCVAF fine. We now turn to the contested assessments.

¶ 34    Defendant contends that the $100 court systems assessment, imposed pursuant to section 5-1101(d) of the Counties Code (55 ILCS 5/5-1101(d) (West 2010)) is a fine subject to the presentence incarceration credit, while the State argues that said assessment is a fee not subject to the credit. Pursuant to the Illinois Supreme Court's holding in *People v. Graves*, 235 Ill. 2d 244 (2009), we find that the $100 court systems assessment is a fine subject to the presentence incarceration credit. *Id.* at 254 (holding that a $100 assessment under section 5-1101(d) of the Counties Code was a fine rather than a fee because it was to be " 'used to finance education programs related to driving under the influence of alcohol' " rather than to compensate the State for the costs of prosecuting the defendant (quoting 55 ILCS 5/5-1101(d) (West 2002))).

¶ 35    The State contends that the $10 arrestee's medical costs fee assessed against defendant pursuant to section 17 of the County Jail Act (730 ILCS 125/17 (West 2010)) is a fine subject to the presentence incarceration credit. Defendant does not argue that said fine is subject to the credit. Under section 17, the arrestee's medical costs fee "shall not be considered a part of the fine for purposes of any reduction in the fine." 730 ILCS 125/17 (West 2010). Consequently, defendant's presentence incarceration credit shall not apply against the $10 arrestee's medical costs fee. See *People v. Unander*, 404 Ill. App. 3d 884, 890 (2010).

¶ 36    Defendant argues that the $5-per-day presentence incarceration credit should be applied against the $25 VCVAF fine, imposed by the trial court pursuant to section 10 of the Violent Crime Victims Assistance Act (Act) (725 ILCS 240/10 (West 2010)).[1] In support of his position, defendant cites *People v. Dickey*, 2011 IL App (3d) 100397, ¶ 32, in which we applied the $5-per-day presentence incarceration credit against the defendant's VCVAF fine. *Id.* However, the State correctly asserts that section 10(c) of the Act (725 ILCS 240/10(c) (West 2010)) provides that fines imposed pursuant to the Act are not subject to the presentence incarceration credit. The precise issue as to whether the credit applies against VCVAF fines despite the statutory language to the contrary was not raised in *Dickey*. To the extent that our holding in *Dickey* contradicts the clear language of section 10 of the Act, it was in error. We cannot overrule *Dickey*; only the supreme court can do that. We do, however, refuse to follow it for the stated reasons. Consequently, defendant's presentence incarceration credit does not apply against the VCVAF fine.

¶ 37    Therefore, we find that defendant's credit of $1,835 applies against $1,135 in eligible fines: (1) the $25 trauma center fee; (2) the $1,000 DUI law enforcement fine; (3) the $10 mental illness fee; and (4) the $100 court systems assessment. We vacate the docket order for fines and fees and remand the matter to the trial court for entry of a new order for fines and fees in compliance with this opinion.

---

[1]We note that because some of the assessments imposed upon defendant by the trial court are fines rather than fees, the VCVAF fine in the amount of $25 imposed by the trial court is arguably incorrect, as section 10 of the Act (725 ILCS 240/10 (West 2010)) provides that the flat amount of $25 should be assessed only when no other fine was imposed. However, the parties do not raise this issue, so we do not address it in this opinion.

¶ 38                                    CONCLUSION

¶ 39         The judgment of the circuit court of Will County is affirmed in part and vacated in part, and the cause is remanded with directions.


¶ 40         Affirmed in part and vacated in part.

¶ 41         Cause remanded with directions.