2016 IL App (3d) 140112

Opinion filed March 24, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois. |
|---|---|---|
| Plaintiff-Appellee, | ) ) | Appeal No. 3-14-0112 |
| v. | ) | Circuit No. 13-CF-51 |
| | ) | |
| THOMAS J. HIGGINS, | ) | |
| | ) | Honorable H. Chris Ryan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justices McDade and Wright concurred in the judgment and opinion.

**OPINION**

¶ 1    A La Salle County jury found defendant, Thomas J. Higgins, guilty of unlawful delivery of a controlled substance. The trial court sentenced defendant to 12 years' imprisonment. Defendant appeals, arguing: (1) the trial court's failure to determine whether he agreed with defense counsel's decision to concede that he delivered heroin and to then tender a jury instruction on unlawful delivery of a controlled substance denied him a fair trial and his right to decide how to plead; and (2) the trial court imposed an excessive sentence. We affirm.

¶ 2                                    BACKGROUND

¶ 3    Following a January 17, 2013, sale of heroin to police informant, Jerome Shorkey, the State charged defendant by indictment with armed violence predicated on unlawful delivery of a controlled substance (720 ILCS 5/33A-2(a), 570/401(d) (West 2012)). As a result of a prior Class X felony conviction, defendant faced an extended-term sentencing range of 15 to 60 years' imprisonment if convicted.

¶ 4    During a hearing on defendant's motion *in limine* to keep out evidence of drugs found on defendant at the time of arrest, defense counsel indicated to the court that there was "no contest over the delivery. We're not trying to contest the delivery. *** The State intends to prove that a delivery occurred, and quite frankly, there's no contest over that." During his opening statement at trial, defense counsel argued to the jury that while there was no question defendant delivered heroin to Shorkey, the State could not prove defendant was armed with a dangerous weapon at the time he delivered the heroin. Defense counsel specifically stated, "[t]he facts of the case aren't whether or not Tommy Higgins delivered four baggies of heroin to Jerome Shorkey in exchange for $80, in essence. No one's going to dispute that. It happened. It's a fact of life."

¶ 5    At trial, Shorkey testified he was a prior heroin addict and had known defendant for 20 years. On January 17, 2013, Shorkey contacted the police about working with them to purchase heroin from defendant. After thoroughly searching Shorkey for drugs and contraband, a police officer provided Shorkey with $80 in marked bills to purchase heroin from defendant. Shorkey called defendant to set up the buy, and defendant asked him to pick up a pack of Newport cigarettes on his way over. One of the police officers bought a pack of cigarettes with one of the prerecorded bills, recorded the serial numbers on the change, and gave the change ($73) and cigarettes to Shorkey.

2

¶ 6    When Shorkey arrived at defendant's father's home, a small, second-floor efficiency apartment, defendant already had four baggies of heroin sitting out on the table. Shorkey gave defendant the cigarettes and the $73 and turned his hat around, which was the prearranged signal with the police that the sale had taken place. Shorkey was only in the apartment for three or four minutes and never saw defendant with a gun. Shorkey and defendant left the apartment together. Shorkey did not see defendant grab anything on his way out the door; he was pretty sure defendant walked out ahead of him. Defendant might have zipped up his jacket, but Shorkey could not recall minor details. As the two men were walking toward the street, the police officers stepped out of the bushes and identified themselves. The officers searched Shorkey and recovered four baggies of suspected heroin. The officers then searched defendant and recovered $73 in prerecorded bills, a pack of Newport cigarettes, a gun, and two gun magazines. The parties stipulated that two forensic scientists would testify that the four baggies contained heroin, with a total weight of less than one gram.

¶ 7    Upon his arrest, defendant confessed to selling heroin to Shorkey. The State played defendant's recorded statement to the jury. In the statement, defendant told the officers he had been selling heroin for about a year and a half. His suppliers, the Latin Kings, gave him pre-bagged drugs and told him to sell them for $20 a bag. On the morning of January 17, defendant grabbed a gun that belonged to his friend Max because he planned to meet one of his suppliers and was scared of them. His suppliers told him to always keep the drugs safe. After meeting with one of his suppliers, defendant met with Shorkey at his father's house and gave Shorkey four baggies of heroin for approximately $80, less the cost of a pack of cigarettes. Defendant explained he had the gun on him at the time of his arrest because Max wanted it back and defendant planned to take it to him.

3

¶ 8        Following presentation of the State's evidence, defendant testified on his own behalf. Defendant's testimony was mostly consistent with both Shorkey's testimony and his prior recorded statement. Defendant explained he took Max's gun from a safe at his sister's house. He was going to meet his suppliers that day and was scared of them. Defendant met with one of his suppliers in an alley at approximately 10:15 a.m. that morning and wore the gun for protection. When defendant got back to his father's house, he put the gun in a duffle bag by the door; he would never carry a gun around his father's house.

¶ 9        Later that morning, Shorkey, defendant's life-long friend, called him and asked if he had any drugs. Defendant said yes and asked Shorkey to bring him a pack of cigarettes. When Shorkey got to the apartment, defendant gave him four baggies of heroin in exchange for the cigarettes and approximately $80. Defendant asked Shorkey for a ride to his sister's house. Defendant explained to the jury that Max was at his sister's house and wanted his gun back. As he followed Shorkey out the door, defendant grabbed the gun and two clips from the duffle bag and shoved them in his waistband. Defendant zipped up his jacket on his way downstairs. When defendant and Shorkey got outside, several police officers stepped out and arrested him.

¶ 10        At the jury instruction conference, the State requested an instruction on unlawful delivery of a controlled substance as a lesser-included offense of armed violence. Defense counsel indicated his agreement with the State's request. The court inquired whether defense counsel had spoken with defendant about giving the instruction; defense counsel assured the court that he had. The court instructed the jury on both armed violence and unlawful delivery of a controlled substance. After deliberations, the jury found defendant guilty of unlawful delivery of a controlled substance.

¶ 11 After reviewing defendant's presentence investigation report and multiple letters of reference, the court held a sentencing hearing. At the hearing, the court noted that defendant was in good physical health and had obtained a beginning welding certificate from Illinois Valley Community College. Defendant had an extensive juvenile criminal history and an adult criminal history beginning in 1996. Based on a 2002 Class X conviction for manufacture/delivery of more than 15 grams of cocaine, defendant was extended-term eligible, and faced a sentence in the range of 3 to 14 years' imprisonment. In the years following his release from prison on the Class X offense, defendant was convicted of driving on a suspended license and possession of a controlled substance. While the court understood and respected that a jury had found defendant not guilty of armed violence, it explained that defendant was a convicted felon and should not have had a weapon, let alone while being involved in the drug business.

¶ 12 In mitigation, the court noted the lack of harm, other than the arguable harm to society that accompanies the sale of controlled substances. The court also noted that defendant had several dependants, although he was not current on any type of support for those dependants. The court concluded that defendant had very little redeeming value; he was going to sell drugs and was bound to use firearms while doing so. The court declined defense counsel's request for a finding that the offense was committed as a result of his use or abuse of controlled substances so that defendant could get treatment. The court explained, defendant "just makes money on it." Based on defendant's extensive criminal history and the need to protect society and deter others, the court sentenced defendant to 12 years' imprisonment.

¶ 13 Defendant did not file any posttrial motions. This appeal followed.

¶ 14                               ANALYSIS

¶ 15                    I. Lesser-Included Offense Instruction

¶ 16    Defendant first argues the trial court erred by failing to inquire whether he understood the ramifications of defense counsel's decision to concede delivery of heroin and to then tender a separate jury instruction on unlawful delivery of a controlled substance. Defendant claims, because defense counsel's strategy was the equivalent of him pleading guilty, it was incumbent upon the trial court to confirm that he agreed with defense counsel's decision, just as it is incumbent upon a trial court to admonish a defendant when he pleads guilty. Defendant concedes that he forfeited this issue on appeal by failing to file a timely posttrial motion. *People v. Johnson*, 218 Ill. 2d 125, 138 (2005) (a defendant forfeits an issue on appeal by failing to timely object at trial and raise the issue in a posttrial motion). However, defendant requests that we consider his argument under the second prong of the plain-error doctrine.

¶ 17    A reviewing court may consider a forfeited issue under the plain-error doctrine when "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010) (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)); *People v. Williams*, 139 Ill. 2d 1, 14-15 (1990). The first step in plain-error review is to determine whether an error occurred at all. *People v. Hudson*, 228 Ill. 2d 181, 191 (2008).

¶ 18    In *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994), the Illinois Supreme Court held that the decision to submit a lesser-included offense instruction is one of five decisions belonging exclusively to a criminal defendant, as opposed to defense counsel. In so holding, the court recognized that the decision to tender a lesser-included offense instruction is analogous to the

6

decision to plead guilty. *Id.* It reasoned, "[b]ecause it is defendant's decision whether to initially plead guilty to a lesser charge, it should also be defendant's decision to submit an instruction on a lesser charge at the conclusion of the evidence. In both instances the decisions directly relate to the potential loss of liberty on an initially uncharged offense." *Id.*

¶ 19 Five years later, in *People v. Garcia*, 188 Ill. 2d 265, 278-79 (1999), the supreme court clarified its holding in *Brocksmith*. There, the State had charged the defendant with possession of a controlled substance with intent to deliver. *Id.* at 267. Upon conclusion of the evidence, the defendant informed the trial court that he agreed with his attorney's decision not to request an instruction on the lesser-included offense of possession of a controlled substance. *Id.* at 269. The trial court reviewed the evidence and concluded it had a responsibility to give the jury the lesser-included offense instruction *sua sponte*, despite the defendant's objection. *Id.* The jury subsequently found the defendant guilty of possession of a controlled substance. *Id.* On appeal, the defendant claimed the holding in *Brocksmith* gave him unfettered control over instructions on lesser-included offenses. *Id.* at 278. Finding the defendant's reliance on *Brocksmith* misplaced, the supreme court rejected this argument. *Id.* at 278-79.

¶ 20 The *Garcia* court explained that nothing in *Brocksmith*'s holding took away a trial court's discretionary authority to tender a lesser-included offense instruction *sua sponte*, nor did it take away the State's right to have the jury instructed on a lesser-included offense over the defendant's objection. *Id.* at 277, 279. Rather, *Brocksmith*'s holding was limited to the specific scenario where the defense tenders the lesser-included offense instruction. *Id.* at 277. The court reasoned, "[c]learly the State has no legitimate interest in obtaining a conviction for a crime greater than that warranted by the evidence, but neither does the defendant have a right to an

7

acquittal when the evidence, although not sufficient to establish the greater crime, is sufficient to establish a lesser[-]included offense." (Internal quotation marks omitted.) *Id.* at 282.

¶ 21 Finally, in *People v. Medina*, 221 Ill. 2d 394, 409 (2006), the supreme court laid out a procedural framework to ensure that a criminal defendant understands the risks associated with tendering a lesser-included offense instruction. The *Medina* court recognized that, "[w]here a lesser-included offense instruction is tendered [by the defense], a defendant is exposing himself to potential criminal liability, which he otherwise might avoid, and is in essence stipulating that the evidence is such that a jury could rationally convict him of the lesser-included offense." *Id.* Consequently, the court concluded that, when defense counsel tenders a lesser-included offense instruction, "the trial court should conduct an inquiry of defense counsel, in defendant's presence, to determine whether counsel has advised defendant of the potential penalties associated with the lesser-included offense, and the court should thereafter ask defendant whether he agrees with the tender." *Id.*

¶ 22 Here, defendant makes two arguments with regard to the lesser-included offense instruction tendered in this case. First, defendant claims the trial court was required to admonish him of the risks associated with admitting he delivered heroin as soon as that strategy became clear to the court. Second, defendant claims that since the trial court failed to ask him whether he agreed with defense counsel's decision to tender the lesser-included offense instruction, he was denied a fair trial. We find both arguments meritless.

¶ 23 With regard to defendant's first argument—that the trial court was required to admonish him of the risks associated with his concession as soon as defense counsel's strategy became clear—the supreme court explicitly rejected this argument in *Medina*. Recognizing that "the decision whether to tender a lesser-included offense instruction partakes of, and is unavoidably

8

intertwined with, strategic trial calculations," the *Medina* court concluded that a trial court need only inquire into defense counsel's advice regarding potential penalties associated with a lesser-included offense if defense counsel actually tenders the lesser-included offense instruction. *Id.* It explained, where defense counsel chooses *not* to tender the lesser-included offense instruction, the court runs of risk of "improperly intruding on the attorney-client relation and interfering with the defense strategy counsel has pursued." *Id.* In other words, where defense counsel does not tender a lesser-included offense instruction, the trial court generally should not interfere with what might very well be a defense strategy and need not give generalized admonishments to the defendant. *Ergo*, defendant's argument that the trial court should have admonished him as soon as his attorney's strategy became clear (in this case, at the hearing on defendant's motion *in limine*) is without merit.

¶ 24    As for defendant's second argument—that the court's failure to confirm he agreed with tendering the lesser-included offense instruction denied him a fair trial—we find defendant's reliance on *Medina* misplaced. As explained above, *Medina* laid out a procedural framework for trial courts to follow when *defense counsel* tenders a jury instruction on a lesser-included offense. Here, it was the State that requested the lesser-included offense instruction for unlawful delivery of a controlled substance. Thus, the procedure outlined in *Medina* is inapplicable, and the trial court in this case was not required to ensure defendant agreed with the decision not to object to the State's tender of the instruction. See *Garcia*, 188 Ill. 2d at 279.

¶ 25    Defendant's admission of guilt to unlawful delivery of a controlled substance in this case appears to have been nothing more than what turned out to be an effective trial strategy. See *People v. Siverly*, 194 Ill. App. 3d 981, 991 (1990) (defense counsel's concession of the defendant's guilt only to the lesser-included offense of voluntary manslaughter in the hope of

avoiding a murder conviction was viewed as good defense strategy). The State charged defendant with armed violence, a Class X felony with a sentencing range of 15 to 60 years' imprisonment. By not objecting to the State's tender of the jury instruction for unlawful delivery of a controlled substance, defendant avoided the more serious felony conviction. Also, in light of the evidence, with or without defendant's testimony, the trial court would likely have given the instruction over the objection. The court sentenced defendant to 12 years' imprisonment—3 years less than the *minimum* sentence he could have received had the jury convicted him of armed violence. Based upon the trial court's comments at sentencing, it appears likely that any sentence given on the more serious offense would have exceeded the minimum.

¶ 26    Because we find no error, plain or otherwise, we affirm defendant's conviction for unlawful delivery of a controlled substance.

¶ 27                              II. Sentencing

¶ 28    Defendant's final argument is that his sentence was excessive in light of his personal background, the nonviolent nature of the offense, the extremely small amount of drugs involved, and the relatively minor nature of the drug offense that allowed for extended-term sentencing. Defendant asks that this court review his sentence as a matter of plain error and either reduce his sentence or remand for a new sentencing hearing. We find no error in the court's sentencing determination.

¶ 29    It is well settled that a trial court has wide latitude in sentencing a criminal defendant, so long as it neither considers improper aggravating factors nor ignores relevant mitigating factors. *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003). In conducting our review, we presume that the trial court considered all mitigating evidence absent some indication to the contrary. *People v. Marlow*, 303 Ill. App. 3d 568, 572 (1999). The trial court's sentencing determination is

10

granted great deference by reviewing courts because the trial court is generally in a better position weigh factors such as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). A sentence within the statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 30 The sentencing range for unlawful delivery of a controlled substance, a Class 2 felony, is three to seven years' imprisonment. 730 ILCS 5/5-4.5-35 (West 2012). Because defendant had a prior Class X felony conviction for manufacture/delivery of more than 15 grams of cocaine (the conviction defendant refers to on appeal as "relatively minor"), defendant was extended-term eligible, subjecting him to a sentencing range of 7 to 14 years' imprisonment. *Id.* The midpoint of this range is 10½ years. While defendant's 12-year sentence is near the top of the sentencing range, defendant has failed to establish that it is manifestly disproportionate to the nature of the offense, or that it is greatly at variance with the spirit or purpose of the law. In announcing defendant's sentence, the trial court put specific emphasis on defendant's lengthy criminal history and his possession and use of a weapon while being involved in the drug industry. Defendant has multiple drug convictions, and he openly admitted to conducting drug business while in possession of a firearm.

¶ 31 While defendant argues the trial court failed to seriously consider his history of physical and sexual abuse, mental illness, and drug and alcohol abuse, each of these potentially mitigating factors was a part of defendant's presentence investigation report, which the court noted it had considered. See *Marlow*, 303 Ill. App. 3d at 572. It is not our duty to reweigh the factors involved in the court's sentencing decision. *People v. Lake*, 2015 IL App (3d) 140031, ¶ 23. As

11

such, we conclude that the trial court considered all the relevant factors and fashioned a sentence that was proportionate to the offense and justified in light of defendant's criminal history, the need to protect society, and the need to deter others from committing similar crimes.

¶ 32                                    CONCLUSION

¶ 33        For the foregoing reasons, we affirm the judgment of the circuit court of La Salle County.

¶ 34        Affirmed.