2021 IL App (1st) 181667-U

No. 1-18-1667

Order filed February 5, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 9018 |
| | ) | |
| WESTRY CLAIR, | ) | Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's 15-year sentence for one count of predatory criminal sexual assault of a child is affirmed over his contentions the trial court improperly considered an aggravating factor that was unsupported by evidence and did not adequately consider mitigating factors.

¶ 2    Following a bench trial, defendant Westry Clair was found guilty of one count of predatory criminal sexual assault of a child and was sentenced to 15 years' imprisonment. On appeal, defendant contends his sentence was excessive where the trial court improperly relied on his

shortcomings as a parent to his biological children as an aggravating factor because there was no evidentiary support for the court's comments on that issue, and where the court did not adequately consider certain mitigating factors. We affirm.

¶ 3    Defendant was charged with two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)), which alleged he knowingly committed two separate acts of sexual penetration by making contact between his penis and the sex organ of J.A., who was under 13 years of age.[1] As defendant solely challenges his sentence, we recite only those facts necessary to decide this appeal.

¶ 4    Prior to trial, the State filed a motion to admit J.A.'s hearsay statements about defendant's behavior to her mother, Porchea A., her cousin, T.B., and an interviewer at the Chicago Children's Advocacy Center, Shawntae Jones, under section 115-10(b)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10(b)(1) (West 2014)). The court granted the State's motion.

¶ 5    J.A. testified she was nine years old at the time of trial. She previously lived with her siblings, mother, and her mother's boyfriend, defendant, whom she identified in court. On one occasion when J.A.'s mother was at work and defendant was babysitting, he and J.A. were alone in J.A.'s mother's room. Defendant pulled down J.A.'s pants and "put his private part in [her] private part." It felt "[g]ross," and J.A. left the room when defendant stopped. On another occasion, defendant "put his private part in [J.A.'s] private part" while she was on the living room couch. J.A. was six years old at the time of both incidents.

---

[1] We use the victim's initials to protect her privacy in this sexual assault case. See *People v. Munoz-Salgado*, 2016 IL App (2d) 140325, ¶ 1 n.1.

¶ 6    The State introduced a video recorded interview of J.A. at the Chicago Children's Advocacy Center. In the video, J.A. states defendant "always" touched her when her mother was at work, that it occurred more than one time, and that she was six years old the first time it occurred. The first incident occurred in J.A.'s mother's bedroom. Defendant's "private part" touched the inside of J.A.'s "private part," which felt "nasty." The second incident occurred when defendant came into J.A.'s bedroom and did the "same thing."

¶ 7    Porchea A. testified she previously lived with her two children and defendant, her ex-boyfriend, whom she identified in court. J.A. is Porchea's daughter. In April 2016, after defendant had moved out of the house, J.A. began crying and told Porchea defendant had "touched" her more than once. J.A. later specified defendant put his "private part" in her mouth.

¶ 8    The parties stipulated T.B. was 11 years old. J.A. is T.B.'s cousin. In April 2016, J.A. told T.B. defendant had been "feeling on her" every time J.A.'s mother went to work.

¶ 9    Dr. Emily Sifferman testified she treated J.A. three times in 2016. J.A. tested positive for chlamydia.

¶ 10    Defendant moved for a directed finding, which the court denied.

¶ 11    The parties stipulated Shawntae Jones interviewed T.B. at the Chicago Children's Advocacy Center in April 2016. T.B. stated J.A. told her defendant had been "feeling on her" and "put his private part in [her] butt" one time.

¶ 12    The parties also stipulated Chicago police detective Alisa Gladney interviewed T.B. in April 2016. T.B. stated J.A. told her defendant "touched her and tried to put his thing in her private" and defendant "put his private in her butt."

¶ 13    Defendant testified he began dating Porchea in 2010, and they began living together in 2013. He took care of Porchea's children, including J.A., while Porchea was at work. He loved them as if they were his own and had raised them since 2010. Defendant denied he had any sexual contact with J.A.

¶ 14    The court found defendant guilty of the first count of predatory criminal sexual assault of a child, but acquitted him of the second count.

¶ 15    Defendant filed a motion for new trial, which was denied.

¶ 16    At the sentencing hearing, defendant only corrected the spelling of a mother's name in the Presentence Investigation Report (PSI), which had been distributed to both parties. The PSI indicated defendant had six prior felony convictions for drug offenses between 2004 and 2012. It contained information about his educational and employment histories, his plans to continue his education in the future, and his history of substance abuse. The PSI also stated defendant had three children by three different women to whom he was not married, and that his children were being raised by their mothers. Defendant liked to spend his leisure time with his children.

¶ 17    In mitigation, defendant noted his close relationship with his family, his educational background, and his "substantial" employment history. Defendant also stated he had "contributed to the financial support of his three children when he's been able to." He noted he had become a group leader of a Christian program in Cook County jail.

¶ 18    The court sentenced defendant to 15 years' imprisonment. In announcing its ruling, the court noted defendant was responsible for taking care of J.A. when he sexually assaulted her. He abused this relationship "in the most unimaginable and unforgivable way," "forever changing" the seven year old child's life. The court also stated that "although [defendant] had multiple felony

convictions, none of them are for any type of violent crime; and given the nature of this offense, that actually does enure to his benefit." In addition, the court explained

"[Defendant] does have three children; but he doesn't raise any of those children; and he has three children, with three different Mothers. The Mothers raise those children.

He may contribute – or according to him, he has contributed. I don't have any reason to deny, but he doesn't contribute like being a Father. He doesn't contribute like actually being there for those children on a daily basis, to try to prevent them from ending up with 5 or 6 felony convictions as he did.

The ability to Father a child is somewhat inconsequential as far as compared to the responsibility of fathering a child. They are about as far apart as being equals as I can imagine. They are on opposite ends of the spectrum, unless you're going to Father the child and then really be a Father to that child.

So, I give him credit that he says he has provided some financial support through the various temp agencies jobs that he's received. He testified to, also, doing the same with [Porchea], as I mentioned; but it is just a little bit lacking in what a real Father should be doing."

¶ 19    Defendant filed a motion to reconsider sentence, which argued the sentence was excessive in light of his background and the nature of the offense, and that the court "improperly considered in aggravation matters that are implicit in the offense." The court denied this motion.

¶ 20    On appeal, defendant only challenges his 15-year sentence, and requests that we either reduce his sentence or remand for resentencing. Defendant first argues the court improperly relied

on his perceived shortcomings as a father as an aggravating factor, despite the fact there was no evidence of those shortcomings before the court.

¶ 21    The State maintains, and we agree, defendant forfeited this argument by failing to properly preserve it for appeal. To preserve a claim of sentencing error, a defendant must make a contemporaneous objection and file a written posttrial motion raising the issue. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Defendant did not make any objections at the sentencing hearing and concedes "defense counsel did not raise this specific issue when seeking reconsideration of [his] sentence." Thus, defendant failed to preserve this claim of sentencing error, and has forfeited it on appeal. See *Hillier*, 237 Ill. 2d at 544-45.

¶ 22    Defendant cites *People v. Saldivar*, 113 Ill. 2d 256, 266 (1986), for the proposition that a claim the trial court relied on an improper sentencing factor need not be preserved by a contemporaneous objection and a posttrial motion. But our supreme court has described *Saldivar* as one of a few "extraordinary" cases in which that is true (*People v. McLaurin*, 235 Ill. 2d 478, 488 (2009)), and has confirmed the general rule that a claim of sentencing error must be preserved by a contemporaneous objection and a posttrial motion. *Hillier*, 237 Ill. 2d at 544. This case does not present extraordinary circumstances that would excuse defendant's failure to address in the trial court what he now claims was the primary factor sentencing factor. Thus, *Saldivar* does not apply, and defendant has forfeited his challenge to the court's comments about his role as a father.

¶ 23    Nevertheless, defendant seeks review under the plain error doctrine, which provides that "[p]lain errors or defects affecting substantial rights may be noticed [on appeal] although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). However, the plain error doctrine is not " 'a general saving clause preserving for review all errors affecting

substantial rights whether or not they have been brought to the attention of the trial court.' " *People v. Maxey*, 2018 IL App (1st) 130698-B, ¶ 35 (quoting *People v. Herron*, 215 Ill. 2d 167, 177 (2005)). "To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred." *Hillier*, 237 Ill. 2d at 545. This is because without reversible error, "there can be no plain error." *People v. Mitchem*, 2019 IL App (1st) 162257, ¶ 37.

¶ 24     We note the parties disagree as to the standard of review. Defendant argues we should review whether the trial court relied on an improper sentencing factor *de novo*; the State maintains we must review this issue for an abuse of discretion. Under either standard, we would find defendant is not entitled to resentencing. A trial court cannot ignore a mitigating factor, nor can it consider an improper aggravating factor (*People v. Higgins*, 2016 IL App (3d) 140112, ¶ 29), such as an aggravating factor based on speculation (*People v. Zapata*, 347 Ill. App. 3d 956, 964 (2004)). However, a reviewing court can affirm a sentence despite an improper factor if the record shows the weight placed on that factor was so insignificant it did not result in a greater sentence. *People v. Heider*, 231 Ill. 2d 1, 21 (2008). That is the case here, so we need not decide which standard of review applies.

¶ 25     Defendant has not met the threshold requirement for plain error review, which is demonstrating that clear or obvious error occurred. *Hillier*, 237 Ill. 2d at 545. Predatory criminal sexual assault of a child is a Class X felony with a sentencing range of 6 to 60 years' imprisonment. 720 ILCS 5/11-1.40(b)(1) (West 2014). Defendant was sentenced to 15 years. His sentence is within the statutory guidelines, so we presume it is proper. See *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 26    Defendant contends the trial court relied on an improper sentencing factor when it overemphasized his perceived shortcomings as a father to his biological children, and there was "no evidentiary support" for the court's description of his performance as parent. However, even if we find the trial court considered an improper factor, "remand for resentencing is necessary only if the consideration resulted in a greater sentence." *Id.* We do not focus on isolated statements; rather, we consider the record as a whole. *Id.*

¶ 27    We find the trial court did not improperly consider defendant's role as a father at sentencing. First, viewing the record as a whole, its comments about defendant's role as a father simply rebutted defendant's suggestion he should be granted leniency because he was close to his family and supported his children financially. Second, both the PSI and defendant's arguments in mitigation supported the trial court's statements that defendant had three children by three different women, that his children were being raised by their mothers, and that defendant only supported his children financially when he was able to do so. Finally, there is no basis in the record from which we could conclude the trial court's view of defendant's performance as a father resulted in a greater sentence. Thus, neither reduction nor resentencing is warranted. See *Id.* Defendant failed to carry his burden of persuasion under the plain error standard, so the forfeiture of this claim of sentencing error stands. See *Hillier*, 237 Ill. 2d at 545.

¶ 28    Defendant also argues his sentence is excessive because the court did not adequately consider mitigating factors such as "the significant, concrete, and successful steps [he] was already taking while awaiting trial to improve himself," his nonviolent prior criminal history, his relationship with his parents, "his history of drug addiction," and the fact that this case "involved no physical injury."

¶ 29    The existence of mitigating factors does not require a minimum sentence and does not preclude a maximum sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. Factors in mitigation include a lack of serious physical harm to the victim and a defendant's lack of criminal activity for a substantial period before the offense at issue. 730 ILCS 5/5-5-3.1(a)(1), (7) (West 2014). The trial court may also consider a defendant's character, social environment, age, and habits. *People v. Minor*, 2019 IL App (3d) 180171, ¶ 27. A defendant's rehabilitative potential is relevant, but is not entitled to greater weight than the seriousness of the offense, which is the most important factor in sentencing. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). We presume the trial court considered all of the mitigating factors, and a defendant must present affirmative evidence the trial court failed to consider mitigating factors to overcome that presumption. *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51. Moreover, we will not substitute our judgment for that of the trial court simply because we might balance the sentencing factors differently. *Alexander*, 239 Ill. 2d at 214-15.

¶ 30    Defendant fails to overcome the presumption the trial court appropriately considered all of the mitigating factors. At the sentencing hearing, the court had received defendant's PSI, and we presume the court considered the mitigating evidence regarding his criminal, educational, employment, and family histories in it. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 20. Defendant also raised several of the same arguments at the sentencing hearing as he does on appeal. Thus, the trial court not only read the mitigating evidence in the PSI; it heard the mitigating evidence argued as well, and we presume the court considered it. See *Id.*, ¶ 19. Moreover, the court explicitly stated defendant's lack of violent criminal history "enure[d] to his benefit," and that it "g[a]ve him credit" for providing some financial support to his children, as well as J.A.

¶ 31    The lack of serious physical injury to J.A., defendant's "history of drug addiction," and his involvement in a Christian group while in jail were all before the court as well, so we presume the court considered those factors. See *Id.* Just because the court did not specifically discuss each of those factors in passing sentence does not mean the court ignored them. See *People v. Jones-Beard*, 2019 IL App (1st) 162005, ¶ 24 ("[A] sentencing court need not state every factor it considered in determining a defendant's sentence."). Defendant has failed to establish the trial court disregarded any mitigating evidence.

¶ 32    Nor is there any basis to conclude defendant's sentence is greatly at variance with the law or manifestly disproportionate to the offense. See *Alexander*, 239 Ill. 2d at 212. Defendant was sentenced for the predatory criminal sexual assault of a six-year-old girl entrusted to his care, so it is not manifestly disproportionate that the trial court imposed a substantial prison sentence. We also note defendant's sentence is 45 years less than the maximum for predatory criminal sexual assault of a child. See 720 ILCS 5/11-1.40(b)(1) (West 2014). Accordingly, we find his sentence of 15 years was proper.

¶ 33    For the foregoing reasons, we affirm defendant's sentence.

¶ 34    Affirmed.