NOTICE
Decision filed 03/02/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200384-U

NO. 5-20-0384

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 19-CF-304 |
| | ) | |
| CALVIN D. WEBSTER, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Cates concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's 25-year sentence for aggravated battery with a firearm was neither disproportionate to the offense nor an abuse of the circuit court's discretion.

¶ 2     Defendant, Calvin D. Webster, pled guilty to the offense of aggravated battery with a firearm. The circuit court of Jefferson County sentenced defendant to 25 years in prison followed by 3 years of mandatory supervised release. Defendant filed motions to vacate his guilty plea and to reconsider his sentence, both of which the circuit court denied. Defendant appeals, arguing that his sentence is disproportionate to the offense and excessive. We affirm.

¶ 3                                I. Background

¶ 4     On June 4, 2019, Navontae Nesbitt was shot near his parked vehicle in front of a residence located at 2309 Perkins Avenue in Mt. Vernon, Illinois. Defendant turned himself in to police in connection with the shooting after a warrant issued for his arrest.

1

¶ 5    On June 20, 2019, a jury returned a bill of indictment charging defendant with four offenses stemming from the shooting of Nesbitt: aggravated battery with a firearm, a Class X felony, (720 ILCS 5/12-3.05(e)(1) (West 2018)) (count I), aggravated discharge of a firearm, a Class 1 felony, (*id.* § 24-1.2(a)(2)) (count II), armed habitual criminal, a Class X felony, (*id.* § 24-1.7(a)) (count III), and armed violence, a Class X felony, (*id.* § 33A-2(a)) (count IV). The State later filed a superseding information realleging the original four counts[1] but adding a count of attempted first degree murder, a Class X felony, (*id.* § 8-4(a)) (count V). In support, the State generally alleged that defendant, without lawful justification and with the intent to kill Nesbitt, shot at Nesbitt seven times with a .45-caliber handgun and struck him twice.

¶ 6    On October 22, 2019, the matter proceeded to a jury trial. Following jury selection, the State presented the testimony of two emergency dispatchers who identified recordings of three 9-1-1 calls received on June 4, 2019. The State published the recordings to the jury, and the circuit court admitted them into evidence without objection from defense counsel.

¶ 7    In the first call, a man who identified himself as "Riddle" stated that someone fired four or five shots at a man through the window of a truck near his residence located at 2307 Perkins. Riddle also stated that he observed a "maroon newer car" with license plate numbers 804465. Riddle described the shooter as a "Black guy with long braids." In the second call, Travis Burgess, who was located at 24th and Perkins, stated, "Shots fired. Man hit. He's trying to get to the hospital." Burgess described the shooter as a "Black guy." In the third call, Jeanette Serna stated, "I need an officer to 2309 right now." Serna advised that her friend, who she identified as Nesbitt,

---

[1]We note that in both the bill of indictment and superseding information, the State lists the incorrect citation for the offense of aggravated discharge of a firearm, which was later dismissed. Specifically, the State cites "720 ILCS 5/24-1.1(a)(2)," which is the citation for unlawful use or possession of weapons by felons.

was shot and taken to the hospital. Serna identified defendant[2] as the shooter and stated that he was driving a maroon four-door car. Following the presentation of this evidence, the trial adjourned for the day.

¶ 8     Before the State called any witnesses the following day, on October 23, 2019, the State indicated that the parties reached a partial plea agreement. Specifically, the State indicated that defendant agreed to plead guilty to aggravated battery with a firearm (count I) in exchange for the State's dismissal of all other counts (counts II through V). The State indicated that the sentencing range for the offense of aggravated battery with a firearm was between 6 and 30 years, and that there was no agreement as to sentencing. The State explained that it offered to dismiss charges with "higher minimums" to lower the minimum sentence defendant would face. Defense counsel confirmed her understanding of the agreement but indicated that defendant may have changed his mind. When the circuit court asked defendant if he wanted to enter an open plea of guilty to aggravated battery with a firearm, defendant initially responded in the affirmative. After the court advised defendant of the sentencing range for the offense of aggravated battery, defendant stated that he did not want to plead guilty, and the trial resumed.

¶ 9     The State called Dr. Travis Whitehead, who testified that he worked as an emergency room physician at various hospitals in Southern Illinois. He treated Nesbitt at Good Samaritan Hospital in Mt. Vernon, Illinois, on June 4, 2019. Nesbitt was able to speak when he arrived at the emergency room. Dr. Whitehead observed gunshot wounds to Nesbitt's upper back and arm. X-rays revealed that Nesbitt suffered from a shattered right humerus. Dr. Whitehead explained that "with an injury of that magnitude, anything penetrating to the chest, there is a high probability of death pretty soon so we got on the phone." Dr. Whitehead arranged for Nesbitt to be transported

---

[2]Serna stated that Calvin "Webford" or Webster shot Nesbitt in front of her home.

3

by helicopter to a hospital with a thoracic surgeon.

¶ 10    The State next called Mt. Vernon Patrol Captain Christopher Webb, who testified regarding the scene of the shooting. Upon arrival on the scene, Webb observed a pickup truck with shattered windows parked in front of the residence located at 2309 Perkins. Webb observed spent shell casings around the front of the truck, as well as bullet holes in the truck. Webb also observed "what appeared to be blood down the cab behind the driver's door" and blood droplets on the ground spread from "the driver's door area around the back of the truck and around the back passenger's corner onto the sidewalk and up to the front of 2309." Webb requested assistance from the Illinois State Police and contacted Mt. Vernon police detectives.

¶ 11    The State called Mt. Vernon Patrol Corporal Justin Haney, who testified regarding his investigation of the June 4, 2019, shooting of Nesbitt. Haney was advised of a witness report of "registration" that may have been involved in the shooting, and he began searching for the vehicle matching the registration. Haney was also assigned the task of interviewing Nesbitt at the hospital following the shooting. However, Nesbitt refused to answer any questions, including whether he knew who shot him. On cross-examination, Haney clarified that Nesbitt did not verbally respond to questioning and indicated that he did not want to respond by shaking his head.

¶ 12    The State also called Robert Kennedy, who testified that he was defendant's landlord. Kennedy identified various phone numbers belonging to defendant. Kennedy testified that he exchanged text messages with defendant the day after the shooting, in which defendant denied any involvement.

¶ 13    Following Kennedy's testimony, defense counsel advised the circuit court outside the presence of the jury that defendant decided to accept the plea offer discussed earlier in the day. The State and defense counsel confirmed the terms of the deal, and defendant agreed that he

4

wanted to plead guilty. The court again advised defendant that the sentencing range for aggravated battery with a firearm ranged from 6 to 30 years followed by 3 years of mandatory supervised release. Defendant expressed a desire to plead guilty.

¶ 14    The State then provided a factual basis for the charge. The State repeated much of the evidence presented at trial but added that seven shell casings were recovered from the shooting scene. The State indicated that Jeanette Serna and her husband, Travis Taylor, would testify regarding their observations of the shooting from their residence at 2307 Perkins. According to the State, Serna and Taylor would testify that they were sitting on the porch with Serna's one- or two-year-old daughter when they observed defendant and Nesbitt exchange words. Serna and Taylor would testify that they observed defendant walk over to his vehicle, return to Nesbitt with a firearm, and begin firing shots at Nesbitt. The State also indicated that Robert Riddle would testify that he was in his home next door to Serna when he heard arguing, looked out the window, and observed two Black males. Riddle walked to his porch and observed a heavyset Black male with long hair firing multiple shots. Riddle observed and recorded a license plate number of a four-door maroon vehicle, which was registered to defendant.

¶ 15    After hearing the factual basis, the circuit court asked defendant if he believed the State could prove the facts beyond a reasonable doubt to the jury, and defendant responded, "No. But I am going to plead guilty." The court next asked defendant if he was pleading guilty because he was actually guilty of the charge, and defendant responded in the negative. The court rejected the plea, and the State expressed its desire to withdraw the offer.

¶ 16    Defendant then asserted that he wanted to plead guilty, and that he misunderstood the circuit court's question. The State advised that the offer was still open, "provided the Defendant gives sufficient assurances to the Court that this is his voluntary act, and that he is doing so in light

of the evidence that we presented and that we're going to present here today." The court again advised defendant of the sentencing range for aggravated battery with a firearm and confirmed that defendant heard the State provide a factual basis for the charge. When the court asked defendant if he was pleading guilty because he was guilty of the charge, defendant responded, "Yes." Defendant additionally confirmed that he signed a written document expressing his desire to plead guilty. Defendant denied that he was forced or threatened to plead guilty, or that anyone made promises to him, other than the partial plea agreement offered by the State. The court accepted defendant's plea as knowing and voluntary, found defendant guilty of aggravated battery with a firearm, and dismissed counts II through V. In addition, the court ordered the Jefferson County Probation Office to prepare a presentence investigation (PSI) report prior to the sentencing hearing.

¶ 17    On November 7, 2019, Attorney Christian Baril filed an entry of appearance and motion for substitution of defense counsel, requesting that he be substituted as defense counsel for defendant. Attorney Baril also filed a motion to withdraw guilty plea.

¶ 18    On January 16, 2020, the circuit court held a sentencing hearing. At the outset of the hearing, the court advised that the sentencing range for the offense of aggravated battery with a firearm was 6 to 30 years in prison, followed by 3 years of mandatory supervised release. The court next reviewed the PSI report, and allowed the parties to make several corrections. The court indicated that it considered the corrected PSI report, along with the financial impact statement filed by the Illinois Department of Corrections.

¶ 19    The PSI report provided that defendant was 31 years old and had eight children with four different women. Defendant remained in contact with six of his children and was behind on child support obligations for three of his children. Prior to his incarceration, defendant resided with three of his children and their mother, Gwendolyn Jackson. Following defendant's incarceration,

6

Jackson moved to St. Louis with the three children to be closer to her family. Defendant reported that he had phone and Facebook contact with his maternal half-siblings, including, *inter alia*, Ayanna Dinwiddie.

¶ 20    The PSI report indicated that defendant was unemployed at the time of the offense but reportedly held several minimum wage jobs over the years. Defendant was most recently employed at a paint factory, where he worked for approximately two years before he was laid off in 2019. Defendant began filling out paperwork to apply for disability due to his asthma after he was laid off. Defendant reported that he graduated from high school and received a welding certificate after completing a welding program at Rend Lake College. Defendant reported no significant history of drug or alcohol use.

¶ 21    The PSI report also listed defendant's juvenile and adult criminal history. Defendant's juvenile history included two retail theft offenses and one theft offense. Defendant's adult history included multiple traffic offenses, along with four felony offenses. Specifically, defendant was convicted of the following felony offenses from 2011 to 2013: possession of a controlled substance (06-CF-81), aggravated battery (09-CF-30), unlawful delivery of a controlled substance (09-CF-543), and unlawful delivery of a controlled substance (10-CF-562).

¶ 22    The State also presented evidence in aggravation at the hearing. The State initially requested that the circuit court take judicial notice of the record of proceedings and evidence admitted at trial. The court granted the State's request without objection from Attorney Baril. The State also called two witnesses to testify at the hearing.

¶ 23    The State first called Mt. Vernon Police Officer Ray Gilbert, who testified that he reviewed defendant's criminal history records prior to the sentencing hearing. Officer Gilbert testified that defendant's records revealed that "he was arrested 35 times and that he had 66 jail bookings, 51

7

citations—traffic citations." According to Officer Gilbert, the records indicated that defendant was either a victim, suspect, or offender in 20 different weapons reports. Officer Gilbert clarified that defendant was listed as a victim in a record from 2005 and a record from 2014. On cross-examination, Attorney Baril asked if Officer Gilbert knew how many of the 20 reports listed defendant as a victim, and Officer Gilbert responded, "I do not."

¶ 24　The State next called Detective Justin Osborne, who testified that he was familiar with defendant's criminal history. According to Detective Osborne, defendant's aggravated battery conviction stemmed from an incident where defendant broke the arm of his former girlfriend, Tristin Hooper, and hit her several times. Detective Osborne explained that Hooper sought medical treatment and later underwent surgery for her injuries.

¶ 25　Detective Osborne testified that he investigated the June 4, 2019, shooting of Nesbitt. When he arrived on the scene, he observed a truck parked in front of the residence located at 2309 Perkins. Detective Osborne learned that the truck belonged to Nesbitt. Detective Osborne learned that the residence belonged to Jeanette Serna, who was on the porch of the residence with her young daughter at the time of the shooting. Detective Osborne also spoke with Robert Riddle, who observed the shooting from his home next door. Detective Osborne identified a disc containing a 10-minute audio recording of an interview he conducted with Riddle, which was published and admitted without objection from Attorney Baril.

¶ 26　On cross-examination, Detective Osborne testified that Riddle was on mandatory supervised release for a drug-related offense at the time he was interviewed by police in connection with the shooting of Nesbitt. Detective Osborne explained that he contacted Riddle's parole officer to get ahold of Riddle because Riddle did not return several phone calls. Detective Osborne agreed that Riddle did not know defendant and was unable to identify defendant as the shooter.

¶ 27 Defendant called Chester James to testify at the hearing. James testified that he was defendant's neighbor and had known defendant for six or seven years. James described defendant as a good neighbor. James explained that he suffered a heart attack in 2011, and that defendant assisted him with small tasks around the house. James observed defendant in the neighborhood with his children. James opined that defendant was a good father because his children always looked clean, well-fed, and well-behaved.

¶ 28 Defendant next called Ayanna Dinwiddie to testify at the hearing. Dinwiddie testified that she was defendant's sister. Dinwiddie testified that defendant had six children, and that he cared about all of his children. According to Dinwiddie, defendant was "a good father, not just financially but hands-on concerning what's going on, involved with school and things," which she believed were important qualities for a parent.

¶ 29 Following Dinwiddie's testimony, the parties presented arguments. The State argued that there were no mitigating factors under the statute. The State noted that the PSI report indicated that defendant had eight children, not six, and that he was behind on child support. The State also noted that the PSI report indicated that defendant was unemployed and had no source of income.

¶ 30 With regard to factors in aggravation, the State argued that defendant's conduct caused or threatened serious harm in that he shot Nesbitt in the back and chest. The State also pointed out that defendant fired multiple shots in a residential neighborhood in the presence of several witnesses, including Jeanette Serna and her young daughter. The State added that the community was "plagued with shootings and gun crime" and referenced another case involving an unrelated shooting death. The State also argued that defendant had a history of prior delinquency or criminal activity. Lastly, the State argued that a harsh sentence was necessary to deter others from firing multiple shots at unarmed persons. The State requested that the circuit court impose the maximum

9

sentence of 30 years' imprisonment. The State added that, "given his criminal history, given the nature of this crime, broad daylight, seven shots, endangering other people, shooting an unarmed man in the back," the maximum sentence was the only sentence that could adequately protect the public.

¶ 31    Attorney Baril requested that the circuit court not consider serious harm as an aggravating factor. Attorney Baril maintained that serious harm was inherent in the offense of aggravated battery with a firearm. Attorney Baril acknowledged that defendant was charged with several felony offenses, including three felony offenses from 2009 to 2013, but noted that defendant had never been to prison and had no recent criminal history. Attorney Baril argued that imprisonment would impose excessive hardship on his eight children, where the evidence showed that defendant loved his children and was involved in their lives on a daily basis. Accordingly, Attorney Baril requested that the court impose a sentence of six years.

¶ 32    In allocution, defendant stated that he loved his children and would like to continue to be in their lives. Defendant also stated that he was not "a bad person."

¶ 33    Before imposing its sentence, the circuit court reviewed the factors in aggravation and mitigation. Regarding factors in aggravation, the court stated that it would not consider serious harm as a factor in aggravation. However, the court found that defendant had "a considerable history of delinquency or criminal activity," and that the sentence was "necessary to deter others from committing the same crime." The court noted that defendant had an "abysmal" record for a 31-year-old man. The court also noted that defendant's crime was "a very brazen act" and a disregard for the safety of Nesbitt, who was unarmed, and the innocent bystanders, including a child. Regarding factors in mitigation, the court acknowledged that defendant loved his children but found there was no evidence showing that an excessive hardship would be placed on his

10

children if he were incarcerated.

¶ 34    After advising defendant of his appeal rights, the circuit court stated as follows:

"I've mulled this over quite a bit, and—and so I think here—here's my ruling. I'm not going to give you the maximum sentence, and the reason I'm not going to give you the maximum sentence is because the fellow you shot, evidently, has no interest in cooperating with law enforcement at all, and so I guess in his mind it's perfectly okay that you shot him, and he'll just fend for himself, I guess, but I—so I'm going to knock five years off of it.

I'll give you 25 years state penitentiary, three years Mandatory Supervised Release. You will serve that at 85 percent. It's a Class X felony."

Following the hearing, the court entered a written judgement to that effect.

¶ 35    On February 3, 2020, Attorney Baril filed a first amended motion to withdraw guilty plea and vacate sentence. Attorney Baril also filed a motion to reconsider sentence, arguing that mitigation evidence weighed in favor of imposing a shorter sentence.

¶ 36    On November 16, 2020, following multiple continuances, the circuit court held a hearing on defendant's motions to withdraw guilty plea and to reconsider sentence. Attorney Baril argued that a shorter sentence was appropriate because the sentence imposed would place excessive hardship on defendant's eight children. Attorney Baril also argued that a shorter sentence was appropriate because defendant lacked a recent criminal history and pled guilty, which evidenced his acceptance of responsibility, character, and attitude. The State argued that the facts of the case were "egregious," in that defendant shot an unarmed man in a residential neighborhood in broad daylight. The State also noted that defendant's act of filing a motion to withdraw guilty plea conflicted with his argument that defendant was willing to accept responsibility for his actions.

11

After considering the parties arguments, the court stated as follows:

"The Court did consider the Factors in Mitigation along with the Factors in Aggravation—in—in—as well as part of that was that [defendant], as young as he was, had eight—eight children, and the Court was aware of that, was aware that it's not a good thing when a father is imprisoned, not good for his children, but I don't think that that circumstance came anywhere near balancing or outweighing the Factors in Aggravation, and so I believe that under the circumstances with the history and background of the defendant or the history of his—prior criminal history and delinquency is what I mean, that that, together with the nature of the charge, certainly outweighed everything else, so the Court will deny your motion, respectfully."

¶ 37    The parties next presented evidence and argument on defendant's motion to withdraw guilty plea. Relevant here, defendant testified that the State offered him a plea deal "in the middle of the first day of trial." It was defendant's understanding that the initial offer was an open plea to one of the Class X offenses with a sentencing "cap at 18 years." Defendant testified that he did not accept the plea offer because he did not "want to plead guilty to something [he] didn't do." Defendant testified that the State also offered him a plea deal on the second day of trial. It was defendant's understanding that the second offer was an open plea to the offense of aggravated battery with a firearm with no agreement to a sentencing cap. Defendant testified that he initially rejected the plea offer but later accepted the plea after his prior attorney pressured him. Defendant's prior attorney testified that the State initially offered to accept "a plea to one of the Class Xs with a cap of 18 years and dismiss everything else if it was accepted that day." Defendant's prior attorney further testified that defendant did not accept the State's offer that day.

¶ 38    Following the hearing, the circuit court entered an order denying defendant's first amended

12

motion to withdraw guilty plea and his motion to reconsider sentence. Defendant timely appealed.

¶ 39                                            II. Analysis

¶ 40    Defendant contends that his 25-year sentence for aggravated battery with a firearm is disproportionate to the offense and excessive. In support, defendant argues that his sentence neither reflects the nature of the offense and the assistance he provided to secure his conviction, nor the substantial mitigation evidence, including the hardship the sentence would cause his dependents and his lack of a recent criminal history. For the reasons that follow, we disagree.

¶ 41    The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "Although the legislature has prescribed the permissible ranges of sentences, great discretion still resides in the trial judge in each case to fashion an appropriate sentence within the statutory limits." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "The trial court must base its sentencing determination on the particular circumstances of each case, considering such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id*. "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *Id*. "Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000) (citing *People v. Streit*, 142 Ill. 2d 13, 19 (1991)).

¶ 42    Our supreme court has established that, "absent an abuse of discretion by the trial court, the sentence may not be altered on review." *Id.* at 209-10 (citing *Streit*, 142 Ill. 2d at 19). "[A]

13

sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210 (citing *Fern*, 189 Ill. 2d at 54).

¶ 43    We initially note that, here, defendant pled guilty to aggravated battery with a firearm, a Class X felony with a sentencing range of 6 to 30 years. 730 ILCS 5/5-4.5-25 (West 2018). The circuit court sentenced defendant to 25 years in prison—a sentence well within the statutory limits. After carefully reviewing the record, we cannot say that defendant's sentence is disproportionate to the nature of the offense or that the court abused its discretion in sentencing defendant.

¶ 44    The record demonstrates that the circuit court properly considered the nature and circumstances of the offense and concluded that a sentence at the higher end of the sentencing range was appropriate. See *People v. Robinson*, 391 Ill. App. 3d 822, 842 (2009) (noting that a trial court may not use a factor implicit in the offense as an aggravating factor in sentencing, but "a trial court may consider the nature and circumstances of the offense, including the nature and extent of each element of the crime that the defendant committed"). Specifically, the court noted that defendant fired seven shots in a residential neighborhood during the early evening hours with a total disregard for the potential harm to others. Defendant fired multiple shots at Nesbitt in the street, striking him in the arm and upper back, directly in front of Jeanette Serna's home. Evidence showed that Serna was on the porch with her husband and young child at the time of the shooting. Additional evidence showed that another neighbor witnessed the shooting from his nearby home. Thus, defendant's actions endangered not only Nesbitt but also innocent bystanders. Under these circumstances, we cannot say that the defendant's 25-year sentence was disproportionate to the nature of the offense.

¶ 45    Defendant maintains that the State's prior plea offer to cap the sentence at 18 years supports his contention that his 25-year sentence was disproportionate to the nature of the offense.[3] As the State correctly notes, defendant forfeited review of this argument by failing to raise the issue before the circuit court. *People v. Gunn*, 2020 IL App (1st) 170542, ¶ 145. Defendant does not argue that this court should excuse his forfeiture. The only evidence presented regarding the prior plea offer was presented at the hearing on defendant's motion to vacate guilty plea, which occurred after the court issued its ruling on defendant's motion to reconsider sentence. Thus, we agree that defendant forfeited review of this argument.

¶ 46    Forfeiture aside, we reject defendant's argument that the State's prior plea offer supports his contention that the 25-year sentence was disproportionate to the nature of the offense. Defendant acknowledges that the State was not bound by the 18-year sentencing cap offer after it expired. Defendant testified that he rejected the offer because he did not "want to plead guilty to something [he] didn't do." As a result, the State's offer expired and defendant's trial resumed. Moreover, the circuit court was not bound by the State's sentencing recommendation. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 109. Thus, we conclude that the State's prior plea offer, which defendant rejected, fails to show that defendant's sentence was disproportionate to the nature of the offense.

¶ 47    Defendant also asserts that the circuit court failed to consider the assistance he provided in securing his conviction. Defendant claims that a lesser sentence was warranted because he turned

---

[3]In arguing that the sentence was disproportionate to the nature of the offense, defendant also maintains that the State justified its request for the maximum sentence by focusing on widespread gun violence and referencing an entirely different case; however, defendant does not argue, and the record fails to demonstrate, that the circuit court considered the State's reference to gun violence or other crimes in formulating its sentence.

himself in and pled guilty.[4] Defendant relies on *People v. Calva*, 256 Ill. App. 3d 865, 876 (1993), for the proposition that "[i]t is also appropriate to grant leniency to a defendant who, by pleading guilty, acknowledges his guilt and assumes responsibility for his acts." However, as the State correctly notes, such facts were known to the court at sentencing and there was nothing that required the court to assign weight to these facts in formulating a sentence. Thus, we presume the court considered defendant's acts of turning himself in and pleading guilty; however, the court assigned little weight or value to these facts in determining the appropriate sentence.

¶ 48    The record also demonstrates that the circuit court considered the appropriate statutory factors in aggravation and mitigation. The court found no statutory mitigating factors and two statutory aggravating factors: (1) that defendant had a history of prior delinquency or criminal activity, and (2) that the sentence was necessary to deter others from committing the same crime. Defendant asserts that the 25-year sentence does not reflect any of the mitigating evidence, and that the aggravating factors cited by the court do not justify the 25-year sentence. Defendant essentially argues that the court improperly weighed the aggravating and mitigating evidence and asks this court to reconsider the evidence. However, that is not our role on appeal. *People v. Higgins*, 2016 IL App (3d) 140112, ¶ 31. Instead, we must afford the circuit court's sentencing decision great deference, and it will not be overturned even if we may have balanced the factors differently. *People v. Ramos*, 353 Ill. App. 3d 133, 137 (2004).

¶ 49    Specifically, defendant asserts that the circuit court "wrongly refused to consider the hardship that [defendant's] extended incarceration would cause his children as an excessive or an applicable factor in mitigation." Defendant relies on the testimonies of James and Dinwiddie,

---

[4]In making this claim, defendant acknowledges that he maintained his innocence and later sought to withdraw his guilty plea. Defendant asserts that such acts could not be held against him at sentencing, but he does not argue, and there is nothing in the record to show, that the circuit court imposed a higher sentence because defendant filed a motion to withdraw his guilty plea.

which demonstrated defendant's involvement in his children's lives and his ability to provide emotional support for his children on a daily basis. However, neither James nor Dinwiddie specifically testified regarding the hardship defendant's children would face due to his incarceration. James's testimony regarding defendant's ability to parent was based on his limited observation of defendant's children in the neighborhood. The PSI further revealed that defendant had limited contact with Dinwiddie, who mistakenly believed defendant had only six children. The PSI additionally indicated that defendant was not currently employed, and he was behind on his child support obligation for several of his children. The record shows that the court considered this evidence but did not find it sufficient to show hardship on defendant's children.

¶ 50   Defendant further asserts that the circuit court failed to consider his strong work history and lack of substance abuse in imposing the 25-year sentence. However, these facts were set forth in the PSI report, which the court expressly stated that it considered in imposing the sentence. Thus, we presume the court considered defendant's work history and lack of substance abuse, but the court assigned little value or weight to these facts in determining the appropriate sentence. See *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 50 ("The trial court is presumed to consider all relevant factors and any mitigation evidence presented, but has no obligation to recite and assign any value to each factor.").

¶ 51   Defendant next maintains that the two aggravating factors found by the circuit court did not justify a 25-year sentence. Defendant asserts that the court failed to consider his lack of a recent criminal history in imposing the sentence, which defendant claims should have been viewed as mitigating evidence. However, the court expressly stated that it considered the PSI report, which indicated that defendant was convicted of the following felony offenses from 2011 to 2013: possession of a controlled substance (06-CF-81), aggravated battery (09-CF-30), unlawful delivery

17

of a controlled substance (09-CF-543), and unlawful delivery of a controlled substance (10-CF-562). Accordingly, the court was well aware of the dates of defendant's convictions. The court also considered Officer Gilbert's testimony that police records revealed defendant "was arrested 35 times and that he had 66 jail bookings, 51 citations—traffic citations." Officer Gilbert clarified that defendant was listed as a victim, suspect, or offender in 20 different reports of gun violence. Of the 20 reports, Officer Gilbert was unable to provide the number of reports in which defendant was a victim. The court considered this evidence in formulating its sentence. Thus, although defendant had no felony convictions in recent years, the court considered the evidence and found defendant's criminal history weighed in favor of imposing a more severe sentence. It is improper for this court to reweigh the evidence. See *Higgins*, 2016 IL App (3d) 140112, ¶ 31.

¶ 52    Lastly, defendant asserts that, although the circuit court properly considered deterrence in aggravation, the court's consideration of this factor did not justify a 25-year sentence. However, this court will not reweigh the evidence and substitute our judgment for that of the circuit court. See *People v. Alexander*, 239 Ill. 2d 205, 214 (2010) (noting that where the trial judge adequately considered the appropriate factors, it is not the duty of the reviewing court to reweigh the factors involved in the defendant's sentencing decision).

¶ 53    In sum, we conclude that the circuit court properly considered the factors and that the sentence imposed by the court was not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense" (*Stacey*, 193 Ill. 2d at 210). Accordingly, we hold that the circuit court did not abuse its discretion in sentencing defendant to 25 years in prison for aggravated battery with a firearm.

¶ 54                                III. Conclusion

¶ 55    For the reasons stated, we affirm the sentencing judgment of the circuit court of Jefferson

County.


¶ 56    Affirmed.