NOTICE

Decision filed 04/29/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240733-U

NO. 5-24-0733

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 19-CF-304 |
| | ) | |
| CALVIN D. WEBSTER, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Cates* and Justice Hackett** concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We reverse the circuit court's order dismissing defendant's postconviction petition at the first stage of proceedings and remand for second-stage proceedings, where defendant stated the gist of a constitutional claim of ineffective assistance of appellate counsel.

¶ 2   Defendant, Calvin D. Webster, pled guilty to the offense of aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2018)), and the Jefferson County circuit court sentenced him to 25 years in prison followed by 3 years of mandatory supervised release (MSR). This court

_____

*Justice Welch was originally assigned to the panel prior to his death. Presiding Justice Cates was later substituted on the panel and has read the briefs and listened to the recording of oral argument.

**Justice Moore was originally assigned to the panel prior to his retirement. Following his retirement, Justice Hackett was substituted on the panel and has read the briefs and listened to the recording of oral argument.

1

affirmed defendant's conviction and sentence on direct appeal. *People v. Webster*, 2023 IL App (5th) 200384-U. Defendant subsequently filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)), alleging ineffective assistance of plea counsel, post-plea counsel, and appellate counsel. The circuit court dismissed defendant's petition at the first stage of the proceedings, finding that defendant's claims were frivolous, patently without merit, and raised no significant issue of constitutional dimension. Defendant appeals, arguing that the circuit court erred by summarily dismissing his postconviction petition. For the following reasons, we reverse and remand for second-stage proceedings.

¶ 3                                   I. Background

¶ 4      On June 11, 2019, the State charged defendant by three-count information with aggravated battery with a firearm (count I) (720 ILCS 5/12-3.05(e)(1) (West 2018)), a Class X felony; aggravated discharge of a firearm (count II) (*id.* § 24-1.1(a)(2)), a Class 1 felony; and armed habitual criminal (count III) (*id.* § 24-1.7(a)), a Class X felony. That same day, plea counsel filed a motion to reduce bail.

¶ 5      On June 19, 2019, the circuit court held a hearing on defendant's motion to reduce bail. The State argued that the seriousness of the offenses did not support a reduction in bail, given defendant was "accused of shooting another individual. It could very well have been a murder charge but for the fact that the victim did not die." The State offered that the victim, Navontae Nesbitt, although expected to make a full recovery following the shooting incident, was shot "through the back and out the chest and maybe a couple of other times also." The State also stated that two eyewitnesses identified defendant as the individual who shot Nesbitt. The State also stated that two eyewitnesses would testify to the following:

"[Defendant] was engaged in an argument with another individual outside, that that individual ran away from [defendant] because [defendant] had a gun in his hand unknown to them. As that individual ran away, *** [defendant] allegedly turned his attention to the victim in this case, Mr. Nesbit[t], asked him, what, you want some smoke too and began firing at him. It was very much unprovoked in the sense that the altercation that the State intends to put forth at trial initially did not involve the victim, and he's unrelated to the events that had transpired. But that individual outside, who I just mentioned that was arguing with [defendant], he has also confirmed to the police that he was outside arguing with [defendant] and that [defendant] did in fact have a handgun in his possession at that time. *** There's also a neighbor who calls 911 and identifies [defendant's] car via license plate, every number of it, so I am proffering to the Court that the case is strong. It's actually going to grand jury tomorrow with [an] additional charge[ ] of armed violence."

After hearing argument by the parties, the court, taking into consideration defendant's "very poor" criminal history, denied defendant's motion to reduce bail.

¶ 6       On June 20, 2019, a grand jury returned a bill of indictment charging defendant with counts I to III and adding the offense of armed violence (count VI) (*id.* § 33A-2(a)), a Class X felony. The State alleged that defendant, while armed with a firearm, knowingly caused great bodily harm to Nesbitt.

¶ 7       On October 7, 2019, approximately two weeks before the scheduled trial date, the State filed a superseding five-count information against defendant realleging the original four counts and adding an additional count against defendant for attempted first degree murder (count V) (*id.* §§ 8-4(a)), 9-1(a)(1)), a Class X felony. In support, the State alleged that defendant, with the intent to commit first degree murder, performed a substantial step toward the commission of that offense,

3

in that he, without lawful justification and with the intent to the kill Nesbitt, shot a .45 caliber handgun at Nesbitt seven times, striking Nesbitt two times.

¶ 8      On October 22, 2019, the circuit court held defendant's jury trial. The next day, on October 23, 2019, the State informed the court that the parties reached a plea agreement, whereby defendant would plead guilty to aggravated battery with a firearm (count I) (*id.* § 12-3.05(e)(1)), in exchange for the dismissal of counts II to V. Prior to providing a factual basis, the court informed defendant that he could receive a minimum of 6 and a maximum of 30 years in prison, to be served at 85%. Defendant stated that he did not want to plead guilty. Defendant's trial resumed and witness testimony continued. Following the testimony of several additional witnesses, plea counsel informed the court that defendant wished to plead guilty to aggravated battery with a firearm. The court, again, advised defendant of the same sentencing range, and defendant expressed his desire to plead guilty. The State then provided a factual basis.

¶ 9      The State indicated that the evidence would demonstrate that defendant shot Nesbitt in Mt. Vernon, Illinois, with the same gun, as evidenced by seven shell casings recovered from the scene by police. Eyewitness testimony of Jeanette Serna and Travis Taylor, a married couple who observed the shooting from their porch, would show there were "words exchanged between" defendant and Nesbitt. Serna and Taylor saw defendant with a firearm and then saw him fire shots at Nesbitt who stood behind his vehicle. Serna would testify that defendant walked towards Nesbitt as Nesbitt "cowered from the shots and tried to hide." Eyewitness testimony of Robert Riddle, an individual who observed the shooting from his side porch, would demonstrate that Riddle first heard arguing. Riddle then observed defendant "firing multiple shots and chasing Navontae Nesbit[t] around the vehicle." Riddle also observed and recorded on a Post-it note the license plate number of the vehicle at the scene, which was registered to defendant.

¶ 10    After hearing the State's factual basis, the circuit court asked defendant if he believed the State could prove the facts beyond a reasonable doubt to the jury, and defendant responded, "No. But I am going to plead guilty." The court next asked defendant if he was pleading guilty because he was actually guilty of the charge, and defendant responded in the negative. The court rejected the plea, and the State expressed its desire to withdraw the offer. Defendant quickly asserted that he wanted to plead guilty, stating "I didn't understand." The State advised that the offer was still open "provided the Defendant gives sufficient assurances to the Court that this is his voluntary act, and that he is doing so in light of the evidence that we presented and that we're going to present here today." The court, again, advised defendant of the sentencing range for aggravated battery with a firearm and confirmed that defendant heard the State's factual basis for the charge to which he would plead guilty. When the court asked defendant if he was pleading guilty because he was guilty of the charge, defendant responded, "[y]es." Defendant then confirmed that he signed a written document expressing his desire to plead guilty. Defendant denied that he was forced or threatened to plead guilty, or that anyone made promises to him, other than the partial plea agreement offered by the State. The court accepted defendant's plea as knowing and voluntary. The court subsequently found defendant guilty of aggravated battery with a firearm and dismissed counts II through V.

¶ 11    On November 7, 2019, defendant, represented by new counsel (post-plea counsel), filed a motion to withdraw guilty plea. Defendant's motion argued his plea was not knowingly or voluntarily given but the product of coercion and pressure.

¶ 12    On January 16, 2020, the circuit court subsequently sentenced defendant to 25 years in prison followed by 3 years of MSR. Shortly thereafter, on February 3, 2020, defendant, represented by post-plea counsel, filed a first amended motion to withdraw guilty plea and vacate sentence,

arguing that defendant did not knowingly or voluntarily enter his plea but did so under coercion and pressure of plea counsel. Defendant also filed a motion to reconsider sentence that same day.

¶ 13    On November 16, 2020, the circuit court, following a hearing, denied defendant's motions. On direct appeal, defendant challenged his sentence as disproportionate to the nature of the offense and excessive. This court affirmed defendant's conviction and sentence on direct appeal (*Webster*, 2023 IL App (5th) 200384-U), and the Illinois Supreme Court denied defendant's petition for leave to appeal (*People v. Webster*, No. 129557 (2023)).

¶ 14    On March 12, 2024, defendant filed a *pro se* postconviction petition alleging ineffective assistance of plea counsel, post-plea counsel, and appellate counsel. Defendant raised, among other claims, an ineffective assistance claim, contending that the attempted first degree murder charge (count V) was subject to compulsory joinder with counts I to IV. Specifically, defendant argued that plea counsel was ineffective for failing to move to dismiss the attempted first degree murder charge in violation of the compulsory joinder rule and his right to a speedy trial. Defendant detailed that he based his decision to plead guilty in large part upon plea counsel's advice that a conviction for attempted first degree murder at trial was likely. Defendant also argued that plea counsel and post-plea counsel were ineffective for failing to seek a mental fitness hearing before trial, as both counsels knew that defendant took psychotropic medications and had a significant history of mental health issues, which included having an imaginary friend, "ZACK." Defendant also argued that appellate counsel was ineffective on direct appeal for failing to raise ineffectiveness of both plea counsel and post-plea counsel. Specific to compulsory joinder, defendant argued that appellate counsel indicated a potential issue "[a]t one point" regarding the failure to raise the compulsory joinder and/or speedy trial argument.

6

¶ 15    Importantly, under the heading, "Claims for Relief," defendant stated that appellate counsel rendered ineffective assistance when she failed to raise on direct appeal trial counsel's ineffectiveness and post-trial counsel's infectiveness as it related to:

"a.) Failing to file a Motion to Dismiss Count V (Attempted First Degree Murder) as a volitation of the Compulsory Joinder Rule and the Speedy Trial Act.

\* \* \*

c.) Failing to present the issues raised in the Appeal Brief with any argu[ ]ment that preserved those issue(s) having violated the United States or Illinois Constitution."

¶ 16    Defendant attached his own signed and notarized affidavit attesting that he "reluctantly" agreed to plead guilty based on the understanding that "no other legal options were available" and to eliminate or minimize the possibility of a life sentence in prison. Defendant attested that plea counsel "[a]t no time" advised him that she could file a motion to dismiss count V for the State's failure to timely file the charges against defendant. Defendant also stated that post-plea counsel "convinced [him] not to push [his] reason for wanting to withdraw [his] guilty plea as due to mental health instability. [Post-plea counsel] insisted the 'stronger argument' would be to say [plea counsel] pressured [him] into accepting the guilty plea." Lastly, defendant stated that appellate counsel informed him that issues pertaining to compulsory joinder were "out of the scope of Appellate Court review and thus, she did not want to raise issues pertaining to Compulsory Joinder, Speedy Trial, or fitness to stand trial/accept a guilty plea." Defendant also attached an unnotarized affidavit of Chester Lomax, an individual known to defendant and present at defendant's guilty plea hearing, stating that defendant's "lawyer seemed to offer no help" to defendant.

¶ 17    On May 30, 2024, following a hearing, the circuit court entered an order summarily dismissing defendant's *pro se* postconviction petition at the first stage of the proceedings. The

7

court concluded that defendant failed to state the gist of a constitutional claim and that defendant's petition was frivolous, patently without merit, and raised no significant issue of constitutional dimension. This appeal followed.

¶ 18                                    II. Analysis

¶ 19    On appeal, defendant argues that the circuit court erred when it summarily dismissed his *pro se* postconviction petition at the first stage of the proceedings. Defendant contends that he alleged the gist of a claim of ineffective assistance of appellate counsel and post-plea counsel. Specifically, defendant argues that appellate counsel was ineffective for failing to raise on direct appeal that either plea counsel or post-plea counsel were ineffective for failing to raise a mandatory joinder challenge as it related to the addition of the attempted murder count. Alternatively, defendant argues that post-plea counsel was ineffective by failing to argue that plea counsel was ineffective for failing to raise a mandatory joinder challenge in defendant's motion to withdraw guilty plea. We address defendant's contentions in turn.

¶ 20    The Act provides a method for persons under criminal sentence to assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The Act provides a three-step process to resolve a criminal defendant's conviction or sentence that resulted from a violation of rights protected under the state or federal constitution. *People v. York*, 2016 IL App (5th) 130579, ¶ 15. Section 122-2 of the Act requires the postconviction petition "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-1 *et seq.* (West 2022). "At the first stage of postconviction proceedings, the court reviews the petition independently and determines whether the petition is frivolous or patently without merit." *York*, 2016 IL App (5th) 130579, ¶ 15. At this stage, the court treats allegations of fact as true so long as

8

those allegations are not affirmatively rebutted by the record. *People v. Bethel*, 2012 IL App (5th) 100330, ¶ 10. A postconviction petition is considered frivolous or patently without merit if the allegations in the petition fail to present the "gist of a constitutional claim," that is, has no arguable basis in either law or fact. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996); *Hodges*, 234 Ill. 2d at 16. Further, a petition that lacks an arguable basis in either law or fact is one that is based on an indisputably meritless legal theory or fanciful allegations. *Id.* An example of an indisputably meritless legal theory is one that is completely contradicted by the record. *Id.*

¶ 21    This appeal comes to us after a first-stage dismissal. In order to survive a dismissal at this stage, a *pro se* postconviction petition such as defendant's need only present a limited amount of detail (*id.* at 9 (citing *People v. Delton*, 227 Ill. 2d 247, 254 (2008); *People v. Torres*, 228 Ill. 2d 382, 394 (2008)), and there is no need to set forth the claim in its entirety or include legal argument or citations to legal authority (*Gaultney*, 174 Ill. 2d at 418). Because most petitions are drafted at the first stage by defendants with little legal knowledge or training, the threshold for survival at this stage is low. *Hodges*, 234 Ill. 2d at 9 (citing *Delton*, 227 Ill. 2d at 254; *Torres*, 228 Ill. 2d at 394). Our review of the circuit court's dismissal of defendant's postconviction petition at the first stage is reviewed *de novo*. *People v. Edwards*, 197 Ill. 2d 239, 247 (2001).

¶ 22    We look to *Strickland v. Washington*, 466 U.S. 668, 694 (1984) when considering an ineffective assistance of counsel claim. Under *Strickland*, a defendant must show both that counsel's performance "fell below an objective standard of reasonableness" and the deficient performance prejudiced defendant. *Id.* A petition alleging ineffective assistance may not be summarily dismissed if "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17.

9

¶ 23    After reviewing defendant's petition, we find that it presented an arguable claim that appellate counsel rendered ineffective assistance of counsel by failing to raise plea counsel's ineffectiveness on direct appeal. Section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2022)) mandates that: "every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant[.]" *Id.* Under subsection (a), a defendant's right to a speedy trial is automatic, and the State must bring the defendant to trial within 120 days. *People v. Garrett*, 136 Ill. 2d 318, 324 (1990). If a defendant is not tried within the statutory period, then the defendant must be released, and the charges dismissed. 725 ILCS 5/103-5(d) (West 2016); *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006).

¶ 24    Defendant alleged in his petition that plea counsel should have moved to dismiss the attempted first degree murder charge against defendant based on compulsory joinder and speedy trial principles. Defendant alleged that plea counsel, instead, encouraged him to accept the State's plea agreement to avoid a potential life sentence resulting from the attempted first degree murder charge. As such, defendant alleged that plea counsel's misguided legal advice deprived him of a fair opportunity to make a knowing and intelligent waiver of his constitutional right to a trial by jury. Defendant's allegation has an arguable basis in law, provided that defendant's statutory speedy trial right provides a potentially viable ground for the dismissal of the charges against defendant. See 725 ILCS 5/103-5(d) (West 2022); *Woodrum*, 223 Ill. 2d at 299. That said, we find that the present record does not refute defendant's speedy trial contention. Further, we make clear that we take no position on whether an actual speedy trial violation occurred, provided defendant need only present the gist of a claim at the first stage.

¶ 25    Moreover, we address the State's contention that defendant raised for the first time a claim that appellate counsel was ineffective for failing to raise post-plea counsel's ineffectiveness for failing to raise a mandatory joinder challenge in defendant's motion to withdraw guilty plea. In addition, the State argues defendant raised for the first time that post-plea counsel was ineffective for such failing. Defendant contends, however, that he "connected both post-plea counsel and appellate counsel to the issue of compulsory joinder and speedy trial" in the section titled, "Claims for Relief" contained in his postconviction petition. Importantly, the Illinois Supreme Court determined that if some claims are subject to dismissal at the first stage while others are not, the entire postconviction petition must be docketed for second-stage proceedings. See *People v. Rivera*, 198 Ill. 2d 364, 370-71 (2001). Although this court could address defendant's remaining allegations, we find that the allegation in defendant's petition concerning appellate counsel's failure to raise plea counsel's ineffectiveness on direct appeal was unrefuted by the record, and therefore, requires the advancement of the entire petition to the second stage of post-conviction proceedings. See *id.* at 374.

¶ 26    Based on the foregoing, we conclude that defendant's petition presented the gist of a constitutional claim. Accordingly, we hold that the circuit court erred by summarily dismissing defendant's *pro se* postconviction petition at the first stage of proceedings. On remand, we instruct the circuit court to consider the entire petition at the second stage of the postconviction process.

¶ 27                                III. Conclusion

¶ 28    For the foregoing reasons, we reverse the order of the circuit court of Jefferson County, and we remand for second-stage proceedings.


¶ 29    Reversed and remanded with directions.